UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALARRA DIANA BOUTELL,

       Plaintiff,                          Case Number 11-10617

v.                                          Honorable Thomas L. Ludington

W.H.B. COMPANY
and TIMOTHY D. BOUTELL,
jointly and severally,

       Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS, CANCELING HEARING, DISMISSING
COUNTS III-VI WITH PREJUDICE, AND ORDERING PLAINTIFF TO SHOW CAUSE**

Plaintiff Alarra Boutell ("Plaintiff") filed a complaint against Defendants W.H.B. Company ("WHB") and Timothy Boutell ("Tim") (collectively, "Defendants") alleging state law claims for denying her financial information, requesting an accounting, and alleging breach of duties, breach of contract, conversion, and requesting appointment of a receiver. Plaintiff contends that jurisdiction is proper in this Court based on diversity of citizenship because Plaintiff is an Arizona resident, Defendants are Michigan residents, and the amount in controversy exceeds $75,000. Plaintiff's claims relate to two Michigan-based family limited partnerships: D&B Family Limited Partnership, which owns a number of investment properties or businesses, and D, T & B Family Limited Partnership, which owns a family retreat in northern Michigan (collectively, "the Family Limited Partnerships"). More specifically, Plaintiff alleges that since 2003, Tim, the president of WHB, has not to provided her with adequate financial information, has mismanaged the affairs of the Family Limited Partnerships, and has engaged in self dealing.

On March 23, 2011, Defendants filed a motion to dismiss. ECF No. 8. Defendants generally

allege that Plaintiff's claims are those of the Family Limited Partnerships and not Plaintiff's personally. Because the Family Limited Partnerships are Michigan citizens for diversity purposes, Defendants contend the Court lacks subject matter jurisdiction. Accordingly, Defendants contend that Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) because any potential remedy would be that of the Family Limited Partnerships. Finally, Defendants allege that Plaintiff's breach of fiduciary duty and conversion claims should be dismissed under Rule 12(b)(6) because they are barred by the applicable three-year statute of limitations.

Plaintiff filed a response on April 12, 2011 (ECF No. 11), contending that as a limited partner, she can bring direct claims on her own behalf for injuries that she has suffered. Plaintiff also contends that although some of the alleged misconduct occurred outside the statute of limitations, she can still recover because the alleged wrongful conduct took place in the three years preceding the filing of the Complaint. She further alleges that she was unaware of some of the conduct constituting the legal claims because Defendants prevented her from accessing the documents and information necessary to know of the claims. Defendants filed an untimely reply (ECF No. 12) on May 11, 2011.[1]

The hearing scheduled for June 8, 2011, was not conducted. Counsel met informally on numerous occasions seeking a consensual resolution of the issues, unsuccessfully. The Court now concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. E.D. Mich. L.R. 7.1(f)(2). For the

---

[1] Defendants' reply brief reflects that Plaintiff agreed to a filing extension but an extension from the Court was not requested.

-2-

reasons stated below, Defendants' motion will be granted in part and denied in part.

## I.   Facts

Plaintiff and Tim are, respectively, sister and brother. Their father, William Boutell ("Bill Boutell") acquired, owned, and operated a number of real estate investments and businesses in Michigan in addition to those in the Family Limited Partnerships. Bill Boutell also has another daughter, Betsy Hurn ("Betsy"). Plaintiff, Tim and Betsy acquired, by gift or inheritance, part or all of their relevant interests in the various entities and partnerships from their father, Bill Boutell. The combined value of the assets owned by the various Boutell entities, Plaintiff alleges upon information and belief, exceeds $10,000,000.

The use of family limited partnerships has been a popular tool among families with large estates for reducing estate taxes. Partnership shares can be given to children, and hopefully appreciate in value, while parents can retain control as general partners and continue to manage the partnership. Plaintiff's complaint alleged that it was Bill Boutell's intent to use the family limited partnerships to provide regular income and support for his adult children which was evidenced by weekly, monthly, and annual draws and distributions before his death. Plaintiff alleges that Bill Boutell had the Family Limited Partnerships fund his children's insurance and tax obligations.

Bill Boutell formed D&B as a family limited partnership on November 23, 1998. He identified his two daughters, Alarra and Betsy, as Limited Partners of D&B. He also identified WHB as the General Partner, but he continued to actively operate and manage the day-to-day activities and business of D&B. A Limited Partnership Agreement of D&B Family Limited Partnership, a Michigan Limited Partnership ("D&B Agreement"), it is alleged though not furnished, was executed

on the same date as the partnership was formed. The D&B Agreement, it is alleged, provides for the duties and liabilities of the General Partner and includes, among other things, that the General Partner shall (1) manage or cause to be managed the affairs of the Partnership in a prudent and business like manner; (2) render periodic reports to all Partners as to the operations of the Partnership; (3) deposit all funds of the Partnership in Partnership bank accounts; (4) maintain complete and accurate records and accurate books of account; and (5) make such records and books of account available for inspection and audit by any Partner. Over the years, it was the long-standing practice of D&B to pay weekly, monthly, and annual distributions to the Limited Partners.

On May 11, 2001, Bill Boutell formed D, T & B as a family limited partnership and he provided his daughters, Alarra and Betsy, as well as his son, Tim, through the Timothy D. Boutell Revocable Trust (dated February 11, 1991). The trust provided that the siblings received equal one-third or 33.3% interests in the Partnership. Again, Bill Boutell made WHB the General Partner, but he continued to manage D, T & B. On that same day, the Limited Partnership Agreement of D,T & B Family Limited Partnership, a Michigan Limited Partnership, ("D, T & B Agreement") was executed. The D, T & B Agreement allegedly provides for similar General Partner duties and liabilities as the D&B Agreement. D, T & B was founded to manage the Walloon Lake Boutell family retreat. The Walloon Lake vacation home was also referred to as "Last Run." Plaintiff alleges that it was the long standing practice during Bill Boutell's life for payments from other Boutell entities to be used for payment of the expenses of Last Run. Plaintiff emphasizes that the Limited Partners were not requested to pay for any of the expenses associated with Last Run.

Until his health deteriorated in 2003, Bill Boutell was President of WHB. In 2003, Tim became President of WHB and assumed his father's responsibilities as the General Partner of D&B

-4-

and D, T & B. D&B, under Tim's control, continued the practice of making weekly, monthly and annual distributions to the Limited Partners, and continued the practice of paying the insurance premiums and costs, as well as all tax obligations, of the Limited Partners. Bill Boutell died on October 8, 2006.

After Bill Boutell's death, Plaintiff alleges that she would occasionally request financial information and records from Tim related to the performance of the Family Limited Partnerships. With time, Plaintiff believes her requests were met with increasing hesitation and a sense of annoyance. Plaintiff then retained legal counsel in an effort to obtain updated information related to the Family Limited Partnerships. More recently, Plaintiff voiced her concern to Tim that she and Betsy, both equal partners in D&B, had received unequal draws and/or distributions and that their capital accounts were not equal. Plaintiff explains that her capital account in D&B is well over $100,000 in excess of Betsy's capital account. Plaintiff also expressed concerns to Tim that he was using D&B cash to fund, among other things, professional services, expenses and fees for the benefit of other Boutell Enterprises that Tim inherited and that she did not have an ownership interest. She also expressed concern that monies from D&B and D, T & B were being co-mingled with the other Boutell Enterprises in which she did not have an interest.

Instead, Plaintiff alleges, Tim advised Plaintiff the inequality of the capital accounts arose from their father's conduct of the businesses before his death but that Tim would not provide access to the records and accounts to substantiate that fact. Tim allegedly told Plaintiff that he was in control of D&B and that he could decide not to make a distribution to her if she continued to complain about transactions and inequities. Plaintiff perceived Tim's response as a threat. Tim then initiated what Plaintiff alleges he referred to as a "steamroller process." That is, he announced that

-5-

beginning January 1, 2011 he would no longer pay Plaintiff's health insurance premiums, personal liability umbrella insurance premiums, distributions for income tax liability, weekly distributions of $320.50, and monthly distributions of $900 as their father had. This was done even though there was over $700,000 in the D&B bank account.

Tim also had a report sent to Plaintiff explaining that "D, T & B is running out of cash" and warning her that the Limited Partners would need to begin making contributions to cover the expenses of the family cottage. Shortly thereafter, Plaintiff alleges Tim sought to have each of the Limited Partners pay significant sums of money to cover D, T & B expenses. Despite the Walloon Lake property—D, T & B's only asset—no longer providing a benefit to all members of the partnership, Tim continued to maintain the property and did not attempt to sell it.

Plaintiff then filed the instant complaint. Count I alleges that Defendants have "substantially ignored" Plaintiff's request for "annual financial statements, tax returns and reports" relating to the Family Limited Partnerships in violation of Mich. Comp. Laws § 449.22 and seeks immediate production of the requested documents. ECF No. 1 ¶¶ 52, 55. Count II seeks an accounting and alleges, among other things, that "[p]ursuant to common law as well as Mich. Comp. Laws. § 449.22, a formal accounting of a partnership must be rendered on a partner's request where it involves . . . the partnership's property, especially if fraud or concealment is charged or the partnership affairs or assets are in a complicated condition." ECF No. 1 ¶¶ 60, 62. Counts III and IV allege that Defendants have mismanaged the financial affairs of the family limited partnerships and/or engaged in self dealing, thereby diluting Plaintiffs interests in the family limited partnerships. ECF No. 1 ¶¶ 66, 68, 75. Count V alleges that Defendants, through mismanagement and self dealing, diluted Plaintiff's interests in the Family Limited Partnerships and that the dilution constitutes

conversion and an entitlement to treble damages pursuant to Mich. Comp. Laws § 600.291a. Count VI seeks the appointment of a receiver to displace the General Partner in order to manage the affairs of the Family Limited Partnerships.

Defendants contend in their motion and supporting papers that Plaintiff's claims are an attempt to address wrongs to the Family Limited Partnerships and must be pursued in the name of the Michigan-based Family Limited Partnerships. Because the claims are not personal in nature, but must be pursued by the partnerships, the diversity requirements furnishing jurisdiction are not met.

## II.   Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1)

A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exits." *Ostergren v. Maloney*, No. 07-15821, 2008 WL 1766679, at *2 (E.D. Mich. Apr. 15, 2008) (citing *Abbot v. Michigan*, 474 F.3d 324,327 (6th Cir. 2007)) (citations and internal quotations omitted); *see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial jurisdictional challenge "merely questions the sufficiency of the pleading," and the Court resolves such a challenge accepting "the allegations in the complaint as true." *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. Alternatively, a factual jurisdictional challenge requires the court to "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.* To resolve a factual challenge, the Court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

Irrespective of the nature of the attack, "the plaintiff has the burden of proving jurisdiction

in order to survive the motion" by "competent proof." *Van Eck v. BAL Global Fin., LLC*, No. 08-CV-13436, 2009 U.S. Dist. LEXIS 90406, at *5-6 (E.D. Mich. Sept. 30, 2009); *see Leach v. Manning*, 105 F. Supp. 2d 707, 710-11 (E.D. Mich. 2000). However, "[t]he defendant must at least submit some proof that the jurisdictional facts so alleged do not exist." *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 327 (citing Motions in Federal Court: Civil Practice § 5.4.10 (1982) (stating that the fact that jurisdiction is the plaintiff's burden to prove "does not mean that a defendant, without any proof on his part, can put the plaintiff to proof by affidavit of jurisdictional facts sufficiently alleged in the complaint. The defendant must at least submit some proof that the jurisdictional facts so alleged do not exist.")). Jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332 requires complete diversity of citizenship between the plaintiffs and defendants named in a lawsuit. *See Glancy v. Taubman Ctrs.*, 373 F.3d 656, 664 (6th Cir. 2004) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).

Plaintiff has responded to Defendants' motion arguing that the Family Limited Partnerships need not be joined as parties to the case. Plaintiff submits that in order for the Court to dismiss her complaint for failure to name the Family Limited Partnerships, a determination would have to be made under Federal Rule of Civil Procedure 19 that the Family Limited Partnerships are indispensable parties. *Glancy v. Taubman Ctrs., Inc*., 373 F.3d 656, 658 (6th Cir. 2004)(reversing lower court's dismissal of action based on a lack of complete diversity, where lower court did not determine that the absentee partnership was an indispensable party pursuant to Fed. R. Civ. P. 19).

Defendants clarify in their reply that they are not claiming that the Family Limited Partnerships are indispensable parties.  They are challenging Plaintiff's complaint as seeking to personally recover for wrongs to the Family Limited Parternships and to enforce redress for the

-8-

diminution of the value of Plaintiff's interests in the parternships. As will be discussed more fully below, Counts III through V plead claims that should be brought in the name of the partnerships and are therefore derivative in nature. Counts I and II, by contrast, plead claims that Plaintiff is entitled to assert on her own behalf.  Accordingly, it is more accurate to evaluate Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff may still be able to satisfy the requirements for diversity jurisdiction on the remaining claims.

### III.    Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  The requirement is meant to provide the opposing party with " 'fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 42, 47 (1957)).  If a complaint does not meet that standard, the opposing party may move to dismiss it for failure to state a claim at any time before filing an answer.  Fed. R. Civ. P. 12(b)(6).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007) (citations omitted).  "Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true . . . ." *Id.* at 555-56 (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting

-9-

*Twombly*, 550 U.S. at 570)). "Facial plausibility" requires the plaintiff to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Defendants contend that Plaintiff cannot state a claim upon which relief can be granted because her causes of action state derivative claims that must be brought in the names of the Limited Family Partnerships, which would destroy diversity of citizenship. Plaintiff contends that her direct claims against Defendants have been adequately pleaded to provide notice that she is seeking relief for wrongs she has personally sustained. Defendants rely in part on *Jaffe v. Harris*, 109 Mich. App. 798 (1981) as supporting their position that Plaintiff's claims are derivative in nature. The court in *Jaffe* addressed the issues relating to the rights and remedies of limited partners and, more specifically, whether limited partners could bring a derivative action to address wrongs by a general partner. *Id.* at 793. The court concluded that limited partners were similar to stockholders in a corporation and that their remedy depended on the nature or character of the wrong alleged. *Id.* (citing *Strain v. Seven Hills Assocs.*, 75 A.D.2d 360 (1980). "As a general rule, waste, mismanagement and interference with the corporation's business are wrongs to the corporation, the remedy for which is a stockholder's derivative action, and not a cause of action in favor of the individual stockholders even though they may be indirectly damaged because the value of their stock is depreciated." *Strain*, 75 A.D.2d at 370. As a result, in a case of "wrongful misappropriation, diversion, or sale of corporate assets by officers, directors, or majority stockholders of a corporation, stockholders may bring a derivative action on behalf of the corporation against the wrongdoers." *Id.* at 370-71.

"By logical extension it appears that a limited partner's power to vindicate a wrong done to

-10-

the limited partnership and to enforce redress for the loss or diminution in value of his interest is no greater than that of a stockholder of a corporation." *Id.* at 371. "As a general proposition, where a corporation suffers loss because of the acts of officers, directors, or others which diminish or render valueless the shares of stock of a stockholder, the stockholder does not have a direct cause of action for such damages, but has a derivative cause of action on behalf of the corporation to recover the loss for the benefit of the corporation." *Id.* (citations omitted). The *Jaffe* court concluded that limited partners similarly had standing to bring a derivative action on behalf of the limited partnership to address the general partner's wrongdoing.   109 Mich. App. at 793-94. Defendants contend that Plaintiff's claims must thus be derivatively asserted on behalf of the Michigan-based Family Limited Partnerships and not by Plaintiff on her own behalf.

Plaintiff responds that the complaint outlines that her personal rights as a partner have been harmed by Defendants, not just those of the partnership.  Plaintiff contends that the complaint does not plead derivative claims but explains how Defendants have breached fiduciary duties owed directly to her. According to Plaintiff, the Family Limited Partnerships need not be separately identified in order for her claims to be viable because "Michigan law allows limited partners to sue on their own behalf as well as on behalf of the partnership." *Eastland Partners Ltd. Partners v. Village Green Mgmt. Co.* (*In re Brown*), 342 F.3d 620, 627 (6th Cir. 2003); *Adell v. Sommers, Schwartz, Silver & Schwartz, PC*, 170 Mich. App. 196, 203 (1988)(stating that a limited partner may bring both individual claims and derivative claims.). Plaintiff argues that she has standing to enforce her partnership rights on her own behalf, because she has alleged violations of duties owed to her personally, which are independent of the duties owed to the Family Limited Partnerships generally. *In re Brown*, 342 F.3d at 627; *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 474

-11-

(2003). A direct claim, she explains, is properly brought when the injury suffered is personal to the partner and the recovered damages are to be personally received by the damaged partner. *Tampone v. Richmond*, 2010 U.S. Dist. LEXIS 79602, 13 n.1 (E.D. Mich. 2010); s*ee also Estes v. Idea Eng'g & Fabricating, Inc.*, 250 Mich. App. 270; 649 N.W.2d 84 (2002)("*Estes II*"). Claims for minority oppression are properly brought as direct claims. *Weiner v. Weiner Inter Vivos Trust*, 2008 U.S. Dist. LEXIS 21163, at *6-7 (W.D. Mich. 2008)(unpublished opinion).

Plaintiff contends that *Estes II* is instructive. There, the court held that claims for minority shareholder oppression in a corporation could properly be brought as direct claims, in addition to derivative claims. The court in *Estes II* expressly reasoned that the basis for imposing fiduciary duties among shareholders in a close corporation arises from the application of partnership principles. *Id.* at 281 (explaining that, "because the shareholders participate in the management of the corporation, the relationship among those in control of a closely held corporation requires a higher standard of fiduciary responsibility, a standard more akin to partnership law."). Plaintiff contends that *Weiner*, 2008 U.S. Dist. LEXIS 21163, is a natural extension of the *Estes II* court's analysis to the realm of limited partnerships.

In *Weiner*, a dispute arose between a brother and sister who shared interests in various limited liability companies and partnerships. 2008 U.S. Dist. LEXIS 21163, at *3. The defendant moved for summary judgment on  the plaintiff's claims for denial of statutory right to financial information, breach of duties as manager, breach of contract, and accounting, arguing that those claims are merely "derivative in nature." *Id.* at *5. The defendant also reasoned that, if the plaintiff was allowed to amend its complaint to name the entities and state her derivative claims, the court's diversity jurisdiction would be destroyed. *Id.* In denying the defendant's motion, the court concluded

-12-

that the plaintiff's complaint satisfied federal pleading requirements and was "sufficient to put defendant on notice that plaintiff [was] asserting a direct claim on her own behalf rather than a derivative claim on behalf of the Joint Entities." *Id.* at *10. Plaintiff was permitted to plead her claims directly in her individual capacity. *Id.* at *19. Plaintiff contends that she, like the plaintiff in *Weiner*, has properly pleaded direct claims for damages to her personally against Defendants which do not require the Family Limited Partnerships to be identified as the party in interest.

Defendants argue that the cases on which Plaintiff relies are distinguishable. In those cases, limited partners were asserting claims for direct or personal damage. The cases do not address the immediate situation where the limited partner is seeking to vindicate wrongs to the limited partnership itself. Moreover, Defendants contend that Plaintiff has not pleaded a minority oppression claim as did the plaintiff in *Weiner*, *supra*. Defendants emphasize that an objective reading of the complaint makes clear that Plaintiff is seeking to recover for wrongs against the Family Limited Partnerships and to enforce redress for loss or diminution in value of Plaintiff's interests as a partner. Such claims are derivative and any damages would be recoverable by the Family Limited Partnerships, and not to Plaintiff personally.

Plaintiff's claim to obtain financial information from the general partner and her claim seeking that her general partner account for transactions that might have affected her personally undoubtably are personal in nature. The duty with respect to each is one owed by the general partner to the other partners, inter se. By contrast, the alleged injury associated with Plaintiff's breach of duties (Count III), breach of contract (Count IV), and conversion (Count V) claims would be to the partnership itself and any recovery would be to the partnership. Indeed, this conclusion is underscored by the fact that unlike the claims for financial information and an accounting, the

-13-

claims for breach of duties, breach of contract, and conversion of partnership property necessarily involve questions of the internal governance of the partnership and oversight of partnership property. These are claims that may be pursued by the partnership or upon default of the partnership to act, in the name of the partnership.  Accordingly, these claims will be dismissed. Finally, Plaintiff's request for appointment of a receiver does not provide an independent cause of action, but is instead a remedy appropriate where there is a facial showing of mismanagement or a breach of fiduciary duty pursuant to the allegations set forth in Counts III through V, and Count VI alleging a claim for appointment of a receiver will be dismissed.

Plaintiff's claim for the denial of her statutory right to financial information and for an accounting remain. However, whether the amount in controversy requirement is still satisfied by these two remaining claims is not clear and Plaintiff will be required to show cause why the case should not be dismissed for lack of subject matter jurisdiction.

Accordingly, it is **ORDERED** that Defendants' motion to dismiss (ECF No. 8) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff's claims for breach of duties (Count III), breach of contract (Count IV), conversion (Count V), and appointment of a receiver (Count VI) are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff **SHOW CAUSE** in writing on or before February 17, 2012, why the case should not be dismissed for lack of subject matter jurisdiction.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 6, 2012

-14-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 6, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS